## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

JENNIFER CORDOVA,

        Plaintiff

    vs.                                  Civ. No. 23-113 WJ/SCY

BNSF RAILWAY COMPANY,

        Defendant.

## <u>ORDER GRANTING IN PART AND</u>
## <u>DENYING IN PART MOTION TO COMPEL</u>

Plaintiff Jennifer Cordova alleges that she was injured while working for Defendant BNSF Railway Company and that, after she reported her injury, Defendant terminated her employment because of her protected activity (i.e., reporting an on-duty injury). Defendant, on the other hand, asserts that it terminated Plaintiff because she falsified an injury and failed to report a felony conviction. Plaintiff believes that these reasons are pretextual. Presently before the Court is Plaintiff's Motion to Compel Discovery, filed February 2, 2024. Docs. 41, 41-1; *see also* Doc. 46 (response); Doc. 49 (reply). For the reasons discussed below, the Court grants in part and denies in part the motion to compel.

## EXTENSION OF TIME

As an initial matter, Plaintiff requests permission to file a motion to compel after the relevant deadline in the Local Rules expired. Defendant opposes, arguing that the motion is untimely. Under this District's Local Rules, a party must move to compel with 21 days of service of an objection. D.N.M. LR-Civ. 26.6; *see also* Doc. 24 at 1 n.1 (Court's scheduling order, indicating that "*[a]ll* opposed discovery-related motions—including those not covered by D.N.M.LR-Civ. 26.6, such as motions to compel related to depositions or motions for a

protective order under Rule 26(c)—must be filed within 21 days of the response, answer, or objection that is the subject of the motion, unless the parties agree to extend this deadline or the Court extends the deadline"). Plaintiff served her second set of discovery requests on Defendant on October 21, 2023, Doc. 31, and Defendant responded on December 1, 2023, Doc. 38. Thus, Plaintiff's deadline under Rule 26.6 to move to compel was December 22, 2023. Plaintiff did not seek to extend this time and did not file her motion to compel until February 2, 2024. Doc. 41.

Under Federal Rule of Civil Procedure 6(b)(1), if a party moves to extend a deadline before it has expired, the movant need only make a showing of good cause.[1] Fed. R. Civ. P. 6(b)(1)(A). In contrast, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time: (B) on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1). That is, "[i]nsofar as the Rule 26.6 deadline passes before the party files a motion showing good cause for extension, . . . the movant must also demonstrate excusable neglect." *Escano v. RCI, LLC*, No. CV 2:22-360 DHU/GJF, 2024 WL 68530, at *2 (D.N.M. Jan. 5, 2024). "To demonstrate 'excusable neglect' in these circumstances, [the movant] must show both 'good faith' in seeking the additional time to complete its discovery and 'a reasonable basis for not complying within the specified period.'" *United States v. New Mexico State Univ.*, No. 1:16-CV-00911-JAP-LF, 2018 WL 1353014, at *2 (D.N.M. Mar. 15, 2018) (quoting *Estate of Anderson v. Denny's Inc.*, 291 F.R.D. 622, 631 (D.N.M. 2013)).

In her motion, Plaintiff argues that she has good cause to extend the deadline as she was diligent in seeking to confer regarding the discovery issues. Doc. 41-1 at 7. She explains that the

---

[1] Indeed, Local Rule 26.6 allows the Court, for good cause, to extend the 21-day deadline to file a motion to compel.

parties met and conferred on December 15, 2023; although the parties failed to come to an agreement on several matters, on some matters, Defendant's counsel agreed to produce follow-up items by January 5, 2024. Doc. 46-1. By January 5, defense counsel indicated he was still working on the follow-up. Then, on January 11, 2024, he emailed Plaintiff's counsel the final follow-up. Doc. 41-5 at 29-30. This January 11 communication indicated that the parties were unable to reach an agreement on the remaining discovery matters. Plaintiff thus filed her motion to compel on February 2, 2024. Doc. 41.

As Plaintiff points out, the Court has instructed the parties that they should "liberally agree to extend [the Rule 26.6] deadline when the parties are actively engaged in communications to resolve the dispute." Doc. 24 at 1 n.1. Here, it appears the parties were actively engaged in communications to resolve the dispute until at least January 11, 2024. Additionally, though not couched in terms of excusable neglect, Plaintiff explains that during the time she was waiting for Defendant to supplement its discovery responses, she was also in the midst of responding to Defendant's discovery responses. Doc. 41-1 at 8 ("Plaintiff's counsel has been focused on answering discovery in this matter in addition to drafting this motion and supporting brief."). Given the parties' diligent and active communications regarding discovery, to the extent the good cause and excusable neglect standards apply, the Court finds those standards are met. Therefore, the Court will extend the Rule 26.6 deadline and treat the present motion as timely filed.

## DISCOVERY DISPUTES

Federal Rule of Civil Procedure 26(b)(1) permits parties to

> obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Plaintiff asserts, without citation to authority, that "[r]elevancy is exceptionally expansive under the FRSA [Federal Rail Safety Act]." Doc. 41-1 at 9. Unconvinced, the Court applies the same discovery standard in this case as in the typical civil case. Discovery relevance is "to be construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on any party's claim or defense." *Kennicott v. Sandia Corp.*, 327 F.R.D. 454, 469 (D.N.M. 2018) (internal quotation and citation omitted).

Plaintiff argues that a number of Defendant's discovery responses are insufficient. The Court will address each in turn, grouping together related discovery requests.

1. **Interrogatory No 1, Request for Production No. 11, and Request for Admission No. 14**

Interrogatory No. 1 requests that Defendant identify disciplinary data (called "EPTS" data) from January 1, 2019, to the present for all employees that Defendant investigated for violations of the same General Code of Operating Rules ("GCOR") that Defendant alleged Plaintiff violated (i.e., Rules 1.6, 1.2.7, 1.13, 1.6.2).[2] Doc. 41-4 at 6. In response, Defendant asserted many objections, including privacy, undue burden, relevance, and scope, arguing that "information about disciplinary actions against other employees, particularly non-similarly situated employees, has no bearing on the claims or defenses in this case." *Id.* at 6. Without waiving those objections, Defendant provided information as to the only other two employees in the Southwest Division that were noticed and investigated specifically for failure to report a

---

[2] Some of these rules are narrow (Rule 1.6.2, notification of felony convictions) while others are broad (Rule 1.13, reporting and complying with instructions; Rule 1.6, conduct; Rule 1.2.7, furnishing information).

felony conviction and falsification of an on-duty injury. *Id.* at 7. Request for Production No. 11

likewise requests that Defendant produce all documents related to the GCOR investigations of

the above Rules as to any employee, with no time limitation. *Id.* at 37. In response, Defendant

reasserted its objections and pointed Plaintiff to its response to Interrogatory No. 1. *Id.* at 38.

Lastly, Request for Admission No. 14 asks Defendant to

> Admit or deny that BNSF has not fired every employee that BNSF had
> knowledge of who had and failed to report a felony conviction, a plea of guilty,
> deferred adjudication, or any plea that resulted in a felony conviction [where]
> sentencing was delayed or suspended or the felony conviction was subsequently
> modified or reduced.

*Id.* at 53. Defendant denied that statement, providing a response limited to the Southwest

Division and within the timeframe of January 1, 2019 to the present (the same time frame as

Interrogatory No. 1). *Id.* at 54. Finding these answers insufficient, Plaintiff now moves to compel

complete responses.[3]

As an initial matter, although Request for Production No. 11 does not contain a temporal

limitation, Interrogatory No. 1 does (from January 1, 2019 to the present) and Plaintiff states in

her brief that Request for Production No. 11 "pairs with Interrogatory No. 1 as it seeks

documents that would provide additional information regarding the comparative employees

references in Interrogatory No. 1." Doc. 41-1 at 23. Thus, the Court will impose the same

temporal limitation (January 1, 2019 to the present) on Request for Production No. 11. Likewise,

Request for Admission. No. 14 contains no temporal limitation although it seeks information

---

[3] In making her argument regarding these specific discovery requests, Plaintiff asserts that
Defendant has a history of discovery abuse and withholding documents, citing cases in other
districts. Doc. 41-1 at 13 & n.1. The Court will not consider the alleged conduct of BNSF in
other cases when evaluating the present motion.

related to Interrogatory No. 1 and Request for Production No. 11. The Court will also impose a temporal limitation of January 1, 2019 to the present on Request for Admission No. 14.

The Court next turns to Plaintiff's main argument: Defendant should not be allowed to limit its response to those employees investigated for the same conduct as her (failure to report a felony conviction and falsifying an injury). Plaintiff asserts that, to show pretext, she needs comparator data. Thus, she seeks complete information about how Defendant interpreted its rules when applied to non-protected employees—i.e., those who did not engage in a protected activity such as reporting an injury. Doc. 41-1 at 12-13. That is, she argues that broad comparator data, including data of other employees charged with violations of the same rule, even if not for the same conduct, is relevant to her claim so that she can compare how Defendant treated non-protected employees (those who did not report an injury) to how it treated her.

Comparing vastly different conduct, even if the differing conduct is governed by the same rule, however, has little bearing on the issue of pretext. For instance, although a prohibition against smoking in the cab of a locomotive might be governed by the same rule as failing to report an injury, a comparison of these two violators has minimal value to resolution of the pretext issue. *See Salguero v. City of Clovis*, 366 F.3d 1168, 1177 (10th Cir. 2004) ("Because the facts indicate significant differences in conduct among the officers under investigation, [Plaintiff's] allegations of disparate discipline do not suffice to show pretext.").

Plaintiff's discovery requests focus on the wrong comparator and thus would capture too much irrelevant information. Instead of seeking to compare protected versus non-protected employees engaged in similar conduct, she seeks to compare employees engaged in different conduct—i.e., comparing how Defendant treated her when it alleged she failed to report a felony and falsified an injury with how it treated employees that Defendant alleged committed other

violations of the same broad rule. The Court finds Plaintiff's discovery requests to be overbroad.

Defendant's responses, which limit production to employees engaged in similar conduct

(employees investigated for failing to report a felony and falsifying an injury) are appropriate.

Defendant, however, goes beyond limiting its production to employees engaged in

similar conduct. It also limited its production to employees who worked in the same position

(Train, Yard, and Engine) and who were located in the same geographical division (Southwest

Division) as Plaintiff. It argues that relevant comparator data must involve employees working

for the same supervisor and holding the same position. Doc. 46 at 6 nn. 7, 8; *see also Green v.*

*New Mexico*, 420 F.3d 1189, 1194 (10th Cir. 2005) ("[A] plaintiff may show pretext by

providing evidence that [s]he was treated differently from other similarly situated, nonprotected

employees who violated work rules of comparable seriousness. A similarly situated employee is

one who deals with the same supervisor and is subject to the same standards governing

performance evaluation and discipline." (internal quotation marks and citation omitted)).

Plaintiff argues that these limitations are improper because "it is relevant whether BNSF

is treating all its employees covered by the same rules consistently under its discipline policies,

regardless of an employee being labeled a TYE [Train, Yard, Engine] employee." Doc. 49 at 6.

Indeed, the Tenth Circuit has held that the "same supervisor test [is] irrelevant when considering

allegations of a company-wide discriminatory policy." *Piercy v. Maketa*, 480 F.3d 1192, 1202

(10th Cir. 2007). Plaintiff claims, in part, that the discrimination against her was based on

Defendant's company-wide bonus and advancement policies, as well as on Defendant's

company-wide standards for addressing rule violations. Doc. 41-1 at 16-17, Doc. 49 at 7; *see*

*also* Doc. 46 at 11 (Defendant's response, acknowledging the company-wide PEPA policy for

investigating rule violations and making recommendations of discipline, including in Plaintiff's

case in which the Director of Labor Relations recommended her dismissal). The Court agrees with Plaintiff that Defendant should not be permitted to limit its production to employees who had the same supervisor and same position as her.[4]

Next, in response to Request for Production No. 11, Defendant refers to its response to Interrogatory No. 1. Although cross-referencing an interrogatory is a sufficient response to a request for production in some circumstances, here, it is not. Here, Defendant acknowledges that documents responsive to Request for Production No. 11 exist and that it has not produced such documents. To excuse such non-production, Defendant argues that producing the requested documents would be unduly burdensome. Specifically, Defendant asserts that it would have to manually search for and pull the requested documents because it is not possible to batch export the documents. Doc. 46 at 12. Defendant's argument about burden, however, hinges on the assumption that Defendant will be pulling documents for investigations into all the rule violations that Plaintiff included in her discovery requests. The Court is now limiting the parameters of Defendant's discovery obligations to no earlier than January 1, 2019 and to investigations for falsifying an on-duty injury or failing to report a felony conviction (of which there were only two during the relevant time period in the Southwest Division). Having so reduced Defendant's burden, the Court rejects Defendant's overburdensome argument and will require Defendant to produce responsive documents.

Lastly, Defendant argues that the information Plaintiff seeks in these discovery requests implicates the privacy rights of other employees. It argues that "[t]hese sorts of personnel matters plainly invoke legitimate privacy concerns that should only be infringed upon in cases of

---

[4] This ruling, related to what is relevant for discovery purposes, does not speak to what is relevant for admissibility purposes. Decisions related to admissibility are reserved for the presiding judge.

particular need. Given the lack of relevance of the information sought, Cordova has failed to

establish such a need." Doc. 46 at 13. As discussed above, information regarding employees

investigated for similar conduct (falsifying an on-duty injury and failing to report a felony

conviction) is relevant and discoverable. To protect the privacy of the employees involved in

these investigations, Defendant may redact their personal identifying information, such as names,

contact information, and social security numbers. Likewise, the parties are free to move for a

protective order.[5]

In sum, the Court grants in part the motion to compel as to these discovery requests.

Defendant shall provide complete responses to Interrogatory No. 1, Request for Production No.

11, and Request for Admission No. 14 for all employees investigated for similar conduct as

Plaintiff (falsifying an on-duty injury and failing to report a felony conviction), limited to the

time-frame of January 1, 2019 to the present, but without limitation to the position or

geographical division of the employees.

**2. Interrogatory No. 11**

Related to the above questions, Interrogatory No. 11 requests that Defendant

List every BNSF employee, officer, and/or manager employed at BNSF
Albuquerque and Belin Terminal/Local from January 1, 2016, to the present, who
BNSF has knowledge has been convicted of a felony, pleaded no contest, had
deferred adjudication, and/or made any plea resulting in a felony conviction
where sentencing was delayed or suspended or the felony conviction was

---

[5] Although Defendant asserts that many of its responses to the present discovery requests should
be subject to a protective order, neither party has moved for entry of a protective order.
Defendant explains that it sent a draft protective order to Plaintiff in December, but she has not
responded. Doc. 46 at 17 n.28. The Court will not, at this time, enter a specific protective order
as such a request is not before it. Instead, the Court reminds the parties of their duty to meet and
confer on discovery matters. *See* Doc. 19 at 2 n.2. If the parties are able to reach an agreement on
a protective order, they may file an unopposed motion for entry of that order. If the parties are
unable to reach an agreement, either side may file an opposed motion for entry of a protective
order.

subsequently modified or reduced, and the discipline each individual received
from BNSF, if any, including whether such person was terminated.

Doc. 41-4 at 29-30. Defendant objected to this request and pointed Plaintiff to its answer to

Interrogatory No. 1.

Plaintiff moves to compel a complete response, incorporating her argument as to

Interrogatory No. 1 about comparator data. Doc. 41-1 at 19. As discussed above, the relevant

comparator data is information regarding other employees investigated for failure to report a

conviction (and falsifying an injury) and how Defendant treated those employees. This

Interrogatory seeks more. It requests information on any employee convicted of a felony (that

Defendant knew about), whether or not that employee reported the felony conviction or not. That

is, if employees properly reported their felony conviction, how Defendant treated them is not

helpful in comparing how it treated Plaintiff, who it accused of failing to report a felony

conviction.[6] The Court therefore rejects Plaintiff's argument and because the Court has already

ordered that Defendant provide the relevant comparator data (as discussed above), it denies the

motion to compel as to Interrogatory No. 11.

**3. Interrogatory No. 4**

In Interrogatory No. 4, Plaintiff requests,

From 2019 to the present, identify the total number of discipline cases reviewed
by the PEPA Review Board, and for each of the following, the number of reviews
where discipline decisions where reduced, enhanced, sustained, or overturned to
no discipline.

---

[6] After the parties briefed the present motion to compel, the Court held a status conference in
which Defendant referenced the after-acquired-evidence doctrine in support of its contention that
it should be entitled to underlying information related to the charge to which Plaintiff entered a
no contest plea. *See* Doc. 61. The present written briefing did not address this doctrine.
Consequently, neither does the present Order.

Doc. 41-4 at 12. Defendant objects to this request as seeking irrelevant information and creating an undue burden and expense. As background, Defendant explains that BNSF fired Plaintiff in May 2021 and, months later, the PEPA Review Board (Policy for Employee Performance and Accountability) reviewed her dismissal and made no modification to the discipline. Doc. 46 at 14.

On the issue of relevance, Defendant asserts that the PEPA Review Board data Plaintiff seeks does not relate to the parties' dispute about whether it fired Plaintiff for misconduct or for reporting an injury. Doc. 46 at 14. Plaintiff, for her part, argues that the information is relevant because Defendant "frequently uses its PEPA review as a defense in wrongful termination cases and such a statistic requested by Plaintiff would provide significant public policy benefit as contemplated by the Federal Rule of Civil Procedure." Doc. 41-1 at 18. She seeks this statistical information to determine whether the PEPA Review Board essentially functions as a rubber stamp. *Id.* (arguing Defendant "will use its lauded PEPA review as a defense that Plaintiff's discipline was under a multilayer review, however, the PEPA looks to be nothing more than a rubber stamp on the discipline."). The Court agrees that, if Defendant makes such an argument, this statistical information could be relevant to Plaintiff's defense.

The Court, however, further agrees with Defendant that complying with this request would place a disproportionate burden on Defendant compared to the needs of the case. Defendant explains that it does not track the information Plaintiff seeks and so providing the information Plaintiff seeks would "require a manual review of approximately 300-500 cases heard by the PEPA Review Board each year, an activity that would require an estimated three to five days of an employee's time, if not longer." Doc. 46 at 15; *see also* Doc. 46-4 ¶¶ 6-9 (BNSF employee, confirming the same). Given the limited relevance this information might have—i.e.,

it may be relevant to respond to a defense Defendant may make, but that does not actually go to the heart of whether Defendant fired Plaintiff for pretextual reasons—the Court agrees that the request is disproportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1) (proportionality takes into account "the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit").

The disproportionality concerns of Defendant and the Court, however, can be alleviated through cost-shifting. That is, if Plaintiff agrees to pay, within 30 days of production, Defendant's reasonable costs for gathering information to respond to this interrogatory, Defendant must do so. If Plaintiff declines to pay Defendant's costs, the motion to compel is denied as to Interrogatory No. 4.

### 4. Requests for Production No. 4 and No. 6

Request for Production No. 4 asks Defendant to

Produce a copy of the Performance Management Process (PMP) evaluations, supervisor evaluations, self-evaluations, goals, metrics, and ratings for or any individual involved in Ms. Cordova's discipline, including those documents for the following individuals: James Orr, Jason Ornelas, Jay Garcia, Leslie Keener, Keary Walls, Stephanie Detlefsen, Theresa Chavez, Caitlin Johnson, Patrick Torres, and Benjamin Strot from 2019 to the present.

Doc. 41-4 at 33. Defendant objected, asserting that "Plaintiff has no right to rummage through the personnel records of other employees simply because she failed a lawsuit." *Id.* In defense of her request, Plaintiff explains that management employees fill out the PMPs, which can include comments about the number of injuries in a manager's group of employees and the manager's injury statistics (also called the "reportable injury count"). Doc. 41-1 at 19-20. Plaintiff argues that "[t]he PMPs and the topics discussed in the PMPs are relevant because management actively works to affect their PMP numbers," i.e., as in her case where management claimed she falsified her injury and thus removed it from the injury statistics. *Id.* at 20.

The Court agrees with Plaintiff that the PMPs of any manager involved in the decision to terminate Plaintiff is relevant to her pretext argument to show how such managers evaluated their injury statistics and whether they had an incentive to reclassify Plaintiff's injury report as a falsified report. Defendant offered to produce PMPs for the named persons that specifically reference Plaintiff, her alleged injury, or its reclassification as not being work-related. Doc. 41-5 at 29. This offer, however, is too narrow because, even if a manager did not specifically discuss Plaintiff's injury, how that manager generally reported and evaluated his or her injury statistics is circumstantially relevant to Plaintiff's argument that she was fired for reporting an injury. For the same reason, the Court also finds that the timeframe requested by Plaintiff (2019 to the present) is relevant, even though it encompasses years before and after Plaintiff's injury.

Defendant also argues that much of the requested information is irrelevant because only three of the listed individuals were "meaningfully" involved in Plaintiff's discipline: James Orr, Stephanie Detlefsen, and Keary Walls. Doc. 46 at 17. In reply, Plaintiff argues that three others—Jason Ornelas, Caitlin Johnson, and Leslie Kenner—were also involved in her discipline as they gave statements in the disciplinary investigation against her. Plaintiff, however, fails to explain how the remaining four employees she lists were involved in her discipline. Thus, the Court will limit Defendant's response to the six employees named in this paragraph.

Lastly, Defendant argues that if the Court does order production of PMPs, it should be allowed to redact information that is not related to safety. The Court agrees: Plaintiff's relevancy argument hinges on the safety statistics and Plaintiff fails to respond to this request to redact. Defendant also requests that it be permitted to produce the PMPs subject to a protective order. As discussed above, the parties are welcome to move for entry of a protective order.

Relatedly, Request for Production No. 6 seeks "a copy of all policies, rules, and procedures that document[] BNSF's Performance Management Process (PMP), including but not limited to the PMP policy, PMP objectives and development goals, metrics by which those goals are calculated, and any other document that corresponds to this category of documents, that were in place in 2019 to the present." Doc. 41-4 at 34. Defendant objected and produced only the PMP Review Form Introduction. *Id.* Defendant argues that the question is overbroad because everyone who receives a PMP is evaluated on goals and metrics and those goals and metrics differ from employee to employee and from year to year. Doc. 46 at 19. Thus, Defendant reads Plaintiff's request as encompassing documents for every employee subject to PMP nationwide. To the extent Request for Production No. 6 seeks such information, the Court agrees that it is overbroad. The Court, however, reads the request not as seeking individual goals and metrics for every employee, but as seeking Defendant's company-wide policies regarding the PMPs.

Indeed, Plaintiff argues that the "policies, rules and procedures for PMPs would be helpful for a finder of fact in determining whether BNSF policies created an incentive for management to retaliate against employees who report a workplace injury." Doc. 41-1 at 21. For the same reasons discussed above regarding the PMPs themselves, the Court finds this information relevant. Also as discussed above, however, Defendant may limit or redact its responses to provide just those policies, rules, and procedures that document the safety objective/goal/metric discussed in PMPs.

In sum, the Court grants in part the motion to compel as to Requests for Production No. 4 and No. 6. Defendant shall respond to Request for Production No. 4, limited to James Orr, Stephanie Detlefsen, Keary Walls, Jason Ornelas, Caitlin Johnson, and Leslie Kenner, and may redact those portions of the PMPs that do not involve safety. Defendant shall respond to Request

for Production No. 6, limited to policies, rules, and procedures that document the safety

objective/goal/metric discussed in PMPs.

### 5. Request for Production No. 7

In Request for Production No. 7, Plaintiff asks Defendant to

Produce a copy of all documents showing the ICP bonuses,[7] ICP goals, ICP metrics, ICP statistics, calculated goals, and/or merit raises for any individual involved in Ms. Cordova's discipline, including those documents for the following individuals: James Orr, Jason Ornelas, Jay Garcia, Leslie Keener, Keary Walls, Stephanie Detlefsen, Theresa Chavez, Caitlin Johnson, Patrick Torres, and Benjamin Strot for the years 2019 to the present.

Doc. 41-4 at 34-35. Defendant objected, again asserting that "Plaintiff has no right to rummage

through sensitive personnel and financial records regarding other employees simply because she

has filed a lawsuit." *Id.* at 35. As with the PMPs, Plaintiff argues that this information is relevant

to her pretext argument because managers received bonuses based off their business objective

performances and such objectives include safety. Doc. 41-1 at 22.

The Court agrees with Plaintiff that the bonus information could be relevant to show

whether managers involved in Plaintiff's discipline decision had a financial incentive to

reclassify her injury report as a falsified report. However, that relevance is likely limited given

that there is no indication that the bonuses specify whether they are related to safety metrics, or

some other metric. *See* Doc. 41-1 at 22 (Plaintiff's brief, acknowledging that only one of the

metrics for determining bonus was safety); Doc. 41-5 at 37 (deposition of Jason Ornelas, when

asked if a bonus is based on safety incidents, stating "I couldn't tell you exactly what our – how

the executive team decides on the bonus"). To the extent bonuses are specifically tied to safety

performance, Defendant should produce such information regarding the six employees that

---

[7] Neither party explains what "ICP" stands for.

Plaintiff argues were involved in her discipline decision: James Orr, Stephanie Detlefsen, Keary Walls, Jason Ornelas, Caitlin Johnson, and Leslie Kenner. Given the limited relevance of bonuses that are not tied to safety ratings, the fact that Plaintiff can gather information regarding a manager's safety incentives through the PMPs, and the sensitive nature of the information Plaintiff requests, the Court denies the remainder of Plaintiff's motion to compel related to this Request for Production No. 7.

### 6.  Request for Production No. 8

Request for Production No. 8 asks Defendant to

> Produce a copy of any documents created by BNSF that depict any type of performance summary; performance report; safety metrics and reporting; terminal comparisons, ratings, metrics "wins and losses"; and scorecards, including injury tracking for the BNSF Albuquerque and Belin Terminal/Local from January 1, 2019, to the present.

Doc. 41-4 at 35. Defendant objected, asserting that the request is vague and ambiguous and that "[t]aken at face value, this request would encompass hundreds of thousands of pages of documents, the vast majority of which have nothing to do with either party's claims or defenses." *Id.* In her motion, Plaintiff offers no specific argument as to proportionality or relevance, but merely references the proportionality and relevance arguments she made in connection with other discovery requests.[8] Doc. 41-1 at 22.

In its response brief, Defendant explains that, following its meet and confer with Plaintiff, "it was BNSF's understanding that Cordova sought information about the metrics that were

---

[8] Instead, Plaintiff spends the rest of her discussion of Request for Production No. 8 citing a Ninth Circuit case, *Frost v. BNSF Ry. Co.*, 914 F.3d 1189, 1194 (9th Cir. 2019). Doc. 41-1 at 22-23. She argues that the *Frost* case is an example of BNSF failing to produce scorecards. *Id.* That case, however, offers no support to the present discovery request as it only makes a passing reference to BNSF not producing scorecards in discovery. *Frost*, 914 F.3d at 1194. But *Frost* contains no discussion about the breadth of "scorecard" production; therefore, *Frost* does nothing to advance Plaintiff's assertion that her request is not overbroad.

directly affected by the reclassification of Cordova's alleged injury as being non-work-related, including what metrics were referred to in emails talking about the alleged injury being taken '[off] the books' and 'removed from [the] Reportable injury count.'" Doc. 46 at 21-22. As such, Defendant offered to produce documents responsive to this inquiry, subject to a protective order. *Id.* Plaintiff did not respond to the offer. *Id.* In her briefing, she mentions Defendant's proposed compromise, but does not explain why she thinks it is insufficient. Doc. 49 at 9. Given the proportionality concerns Plaintiff's original request creates, and the fact that Plaintiff's request encompasses documents unrelated to her case, the Court agrees that Defendant's compromise is appropriate. The Court therefore orders production of the documents Defendant has agreed to provide. As discussed above, either party is free to move for entry of a protective order.

### 7. Request for Production No. 12

Request for Production No. 12 seeks

> copies of all policies, rules, and procedures, training materials, general and specific guidelines, PowerPoint presentations, slides, memos, and other types of documents that describe how to conduct a BNSF disciplinary investigation, how to determine whether discipline should or should not be assessed, the severity of discipline that should be assessed, and when and whether a manager should use discretion or leniency in their decision making, that were in place in 2020 to the present, including a copy of BNSF's investigation manual in place at the time of Ms. Cordova's investigation and discipline.

Doc. 41-4 at 39. After objecting, Defendant referred Plaintiff to the previously produced PEPA policy. *Id.* Plaintiff argues that, given her allegation that Defendant improperly investigated and terminated her, whether Defendant "fairly and in accordance with its own policies conducted the investigations are an important relevant item ripe for consideration in this case." Doc. 41-1 at 24.

As an initial matter, the Court finds that the timeframe of this request is too broad. The request seeks investigation materials in place from 2020 to the present, but Plaintiff fails to explain how investigation materials in place after her termination are relevant to her case. That

is, training Defendant provided *after* terminating Plaintiff is of little relevance and so unlike other discovery requests addressed above, the Court does not order production of responsive information "to present."

Turning to the substance of the request, in its response, Defendant argues that the only way for Plaintiff to challenge the fairness and adequacy of her investigation is through an arbitration process set out in the RLA (Railway Labor Act). Doc. 46 at 23. But this argument misses the point. Whether Plaintiff can challenge the investigation in a manner outside of RLA (Plaintiff insists she can) is a different question than whether Defendant investigated and terminated her for improper reasons (reporting an injury) in violation of the Federal Railway Safety Act. Plaintiff is not bringing a direct challenge to Defendant's investigation; instead, she is asserting that she could use evidence Defendant unfairly or inadequately investigated her in support of her argument that the result of the investigation was predetermined. Thus, Defendant's policies and training materials as to discipline investigations are relevant to her case.

Defendant also argues that, if the Court does order a response to this request, it should limit the response to recent trainings that the conducting officer (Orr) or the manager who dismissed Plaintiff (Wells) received. Doc. 46 at 23. The Court agrees that investigation materials received by those not involved in Plaintiff's discipline are irrelevant to Plaintiff's claim. But as discussed above, there were other management employees involved in Plaintiff's investigation and discipline, outside of just Orr and Wells. Thus, the Court will require Defendant to respond to this request, limited to just the requested documents received by James Orr, Stephanie Detlefsen, Keary Walls, Jason Ornelas, Caitlin Johnson, and Leslie Kenner that were in place from 2020 to the date of Plaintiff's termination.

### 8. Requests for Admission No. 15, No. 16, and No. 19

Plaintiff asserts that Defendant failed to admit or deny Requests for Admission No. 15, No. 16, and No. 19. First, Request for Admission No. 15 asks Defendant to "[a]dmit or deny that BNSF does not require the termination of an employee for conduct leading to a felony conviction." Doc. 41-4 at 54. Defendant objected to the term "require" as vague and ambiguous. Nonetheless, "BNSF admits that its PEPA Policy states that 'Conduct leading to a felony conviction' including 'a plea of guilty, deferred adjudication or any plea that results in a felony conviction where sentencing is delayed or suspended or the felony conviction is subsequently modified or reduced' is a stand-alone dismissible event, and further admits that BNSF may exercise discretion in enforcing its policies." *Id.* Relatedly, Request for Admission No. 16 asks Defendant to "[a]dmit or deny that BNSF does not require termination of an employee in cases where BNSF has determined that employee had violated a rule listed under Stand-Alone Dismissible Violation in BNSF's Policy Employee Performance Accountability policy." *Id.* at 55. Again, objecting to the word "require," Defendant responded that "BNSF admits that it may exercise discretion in enforcing its policies." *Id.*

Plaintiff argues that these answers "in so many words admit the request, however, BNSF refuses to affirmatively state that it admits." Doc. 41-1 at 25. Indeed, while objecting to the word "require," Defendant also admits that its policies at issue are discretionary and thus, essentially admits that its policies do not require termination. Although Defendant added qualifiers to its responses (as opposed to just admitting), the Court finds that it has sufficiently responded to these requests. *See* Fed. R. Civ. P. 36(a)(4) ("when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest"). The Court deems Defendant's response to be an admission.

Request for Admission No. 19 asks Defendant to "[a]dmit or deny that BNSF trained and tested Ms. Cordova on interpretation of the PEPA policy." Doc. 41-1 at 56. Defendant responded: "BNSF is unable to admit or deny this request as stated because doing so would require BNSF to speculate as to what level of specificity Cordova means by 'trained and tested.' But BNSF admits that PEPA is System General Notice No. 128 and therefore Cordova was required to be familiar and comply with it under GCOR 1.3.3." *Id.* Plaintiff argues that this answer is insufficient because Defendant should be able to either admit or deny whether her training included anything on the PEPA policy. Doc. 41-1 at 25. The Court agrees. This request does not ask for a level of specificity, as Defendant states it does, but simply asks whether Plaintiff was trained and tested on the PEPA policy, which Defendant did not answer. Accordingly, the Court orders Defendant to respond to Request for Admission No. 19.

## CONCLUSION

For these reasons, the Court grants in part and denies in part Plaintiff's Motion to Compel Discovery (Doc. 41). Within 30 days of the entry of this Order, Defendant shall produce the following discovery responses. The motion is denied as to all other requests.

- Interrogatory No. 1, Request for Production No. 11, Request for Admission No 14: provide complete responses to these requests for all employees investigated for similar conduct as Plaintiff (falsifying an on-duty injury and failing to report a felony conviction), limited to the time-frame of January 1, 2019 to the present, but without limitation to the position or geographical division of the employees.

- Interrogatory No 4: if Plaintiff agrees to pay Defendant's reasonable costs for gathering information to respond to interrogatory, Defendant must do so. Plaintiff must pay the costs within 30 days of production.

- Request for Production No. 4: respond to the request, limited to only James Orr, Stephanie Detlefsen, Keary Walls, Jason Ornelas, Caitlin Johnson, and Leslie Kenner, and redact those portions of the PMPs that do not involve safety.

- Request for Production No. 6: respond to this request, limited to policies, rules, and procedures that document the safety objective/goal/metric discussed in PMPs.

- Request for Production No. 7: to the extent bonuses are specifically tied to safety performance, Defendant should produce such information for James Orr, Stephanie Detlefsen, Keary Walls, Jason Ornelas, Caitlin Johnson, and Leslie Kenner.

- Request for Production No. 8: provide documents that show the metrics that were directly affected by the reclassification of Plaintiff's alleged injury as being non-work-related, including what metrics were referred to in emails talking about the alleged injury being taken "[off] the books" and "removed from [the] Reportable injury count."

- Request for Production No. 12: respond to this request, limited to the requested documents received by James Orr, Stephanie Detlefsen, Keary Walls, Jason Ornelas, Caitlin Johnson, and Leslie Kenner that were in place from 2020 to the date of Plaintiff's termination.

- Request for Admission No. 19: provide a response either admitting or denying the statement.

To the extent Defendant believes that any of this information should be produced pursuant to a protective order, the parties should confer regarding a protective order and, if they are not able to reach an agreement, either side may file an opposed motion for entry of a protective order. Defendant may also move to stay any discovery responses it believes should be subject to the protective order until the protective order issue is resolved.

Lastly, because the Court grants in part and denies in part the motion to compel, it also denies both parties' requests for attorney's fees and costs associated with the motion. *See* Fed. R. Civ. P. 37(a)(5)(C).

**STEVEN C. YARBROUGH**
**UNITED STATES MAGISTRATE JUDGE**