IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

JENNIFER CORDOVA,

    Plaintiff,

vs.                                                                              Civ. No. 23-113 WJ/SCY

BNSF RAILWAY COMPANY,

    Defendant.

## ORDER DENYING MOTION FOR PROTECTIVE ORDER

Plaintiff Jennifer Cordova alleges that she was injured while working for Defendant BNSF Railway Company and that, after she reported her injury, Defendant terminated her employment because of her protected activity (i.e., reporting an on-duty injury). Defendant, on the other hand, asserts that it terminated Plaintiff because she falsified an injury and failed to report a felony conviction. Presently before the Court is Plaintiff's motion for protective order, in which she requests an order prohibiting any inquiry into her now-expunged criminal case. Doc. 64. Also before the Court are Plaintiff's two motions to seal, seeking to seal the briefing in this matter because of references to the expunged proceedings. Docs. 63, 68. The Court denies the motion for protective order as untimely and grants in part and denies in part the motions to seal, sealing exhibits that attach the expunged records but declining to seal the briefing which merely discusses the criminal case.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that in January 2021 she injured her leg while working and reported it to BNSF management. Doc. 33 ¶¶ 7-9 (amended complaint). She alleges that Defendant BNSF then began investigating her and, in May 2021, terminated her in retaliation for reporting her injury, while providing pretextual reasons for the termination including failing to report a felony

conviction and falsifying an injury. *Id.* ¶¶ 16-17. As to the underlying criminal case, in April 2014 the State of New Mexico charged Plaintiff with a felony and in January 2015 she pled no contest, resulting in a conditional discharge without an adjudication of guilt. Doc. 65-1 at 1-13. In March 2021, following Plaintiff's completion of probation requirements, she moved to dismiss the case, which the state court granted, dismissing the criminal charges nunc pro tunc. *Id.* at 14-16. In July 2021, Plaintiff filed a petition to expunge the records of her criminal case, which the state court granted on August 30, 2021. Doc. 64-4 at 8. Plaintiff disclosed the expungement order to Defendant in October 2022, during the administrative case, and again on May 15, 2023, during her initial disclosures in the present case.

Plaintiff filed the present lawsuit on February 7, 2023. Doc. 1. On May 30, 2023, Defendant served a subpoena on the Bernalillo County District Attorney's Office ("DA's Office") for "a complete copy of" Plaintiff's criminal case, "including but not limited to all grand jury proceeding information, filings, orders, and correspondence in the case." Doc. 65-2 at 2.[1] That same day, defense counsel emailed a copy of the subpoena to Plaintiff's counsel, *id.* at 1, and filed a certificate of service the next day, Doc. 26. Defendant received responsive documents from the DA's Office on June 13, 2023, labeled BERNCO DA-000001-000161, Doc. 66-1 at 1, and sent a copy of them to Plaintiff's counsel on June 26, 2023, Doc. 65-4.

At the request of the parties, the Court held an informal conference on March 22, 2024 to discuss "an issue regarding a line of questioning at Plaintiff's upcoming deposition related to a criminal charge." Doc. 61 at 1. A few hours before that conference, Plaintiff's counsel emailed the Court and defense counsel, asserting for the first time that the DA's Office "improperly and

---

[1] Defendant also subpoenaed Plaintiff's former attorney and the Second Judicial District Court, Doc. 26, but both responded that no records exists, as the expungement order allows them to do, Doc. 64-4 at 11, 12.

possibly illegally" disclosed documents related to Plaintiff's criminal case and the defense counsel "improperly and possibly illegally" released those documents to Plaintiff's counsel. Doc. 65-6 at 1. At the status conference, the Court declined to comment on the issue of improper disclosure and provided its inclination as to what topics would be appropriate at Plaintiff's deposition. Doc. 61.

On April 1, 2024, Plaintiff filed the present "Motion for a Protective Order." Doc. 64; *see also* Doc. 65 (response); Doc. 66 (sealed response exhibits); Doc. 69 (reply). Plaintiff also filed a "Motion to File Motion for a Protective Order Under Seal." Doc. 63; *see also* Doc. 67 (response); Doc. 71 (reply). Relatedly, she filed a "Motion to Seal Defendant's Response [Docs. 65 and 66] and Plaintiff's Reply [Doc. 69] to Plaintiff's Motion for a Protective Order." Doc. 68; *see also* Doc. 76 (response); Doc. 78 (reply). All three motions are fully briefed and ready for decisions.

## DISCUSSION

1. **Motion for Protective Order**

In her motion, Plaintiff requests a protective order under Rule 26 "forbidding inquiry into any of the documents produced by BNSF as BERNCO DA-000001-000161, forbidding the use and disclosure of these documents in any manner in this case, and forbidding any inquiry into information obtained from an expunged record." Doc. 64-1 at 1; *see also* Doc. 64 at 1 ("Specifically, Cordova moves for a protective order pursuant to Federal Rules of Civil Procedure 26(c)(1)(A) and (D)."). Under Rule 26 "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery; [or] forbidding inquiry into certain matters or limiting the scope of disclosure or discovery to certain matters . . . ." Fed. R. Civ. P. 26(c)(1)(A), (D).

3

Defendant first argues that Plaintiff has waived any objections to the discoverability of the records because she did not timely object to the subpoena it served on the DA's Office or the responsive records. Doc. 67 at 7. As discussed above, Defendant served the subpoena on the DA's Office, and provided a copy to Plaintiff, on May 30, 2023. After receiving responsive records, Defendant provided a copy of them to Plaintiff on June 26, 2023. Yet, Plaintiff did not file the present motion, challenging the inquiry into and use of these responsive documents, until April 15, 2024. And the first time she brought up any issue regarding the responsive documents was on March 22, 2024, in an email to the Court in advance of an informal discovery conference. Thus, almost nine months passed between the time Plaintiff was made aware that the DA's Office provided the expunged records to Defendant and when Plaintiff first raised an issue regarding the use of the records.

In the scheduling order the Court issued in May 2023, it advised the parties that, "*All* opposed discovery-related motions—including those not covered by D.N.M. LR-CIV 26.6, such as motions to compel related to depositions or motions for a protective order under Rule 26(c)— must be filed within 21 days of the response, answer, or objections that is the subject of the motion, unless the parties agree to extend this deadline or the Court extend the deadline." Doc. 24 at 1 n.1 (emphasis in original). Plaintiff's present motion for a protective order falls well outside this 21-day deadline and she did not request or receive an extension.

Plaintiff argues that she did not move to quash the subpoena because, if she had, "all she could have asserted is that the District Attorney's Office *might* violate New Mexico expungement law." Doc. 69 at 4 (emphasis in original). Indeed, Defendant also subpoenaed Plaintiff's former attorney and the Second Judicial District Court, both of which responded that no records existed. Presumably, Plaintiff also expected the DA's Office to respond in this

4

manner. On the flip side, however, if Plaintiff believed it was improper for the DA's Office to release the subpoenaed records because of the expungement order, she could have objected to the subpoena instead of doing nothing and hoping the DA's Office would view release of the records in the same way she views release (as improper under the expungement order). More importantly, Plaintiff's argument regarding her failure to move to quash does not address why she waited nearly nine months before moving for a protective order once she became aware that the DA's Office did, indeed, turn over the expunged records.

Instead, Plaintiff argues that, even if her request is untimely, she has shown good cause to excuse the delay. She argues that she raised the issue in advance of her deposition. And, after it became clear that Defendant planned to inquire into the expunged records, she filed the present motion for protective order. But Plaintiff's present motion is not a protective order aimed at potential questions during her deposition under Federal Rule of Civil Procedure 30(d)(3)(A) on the grounds that potential questions would unreasonably annoy, embarrass, or oppress the deponent. Rather, the crux of her motion is that the DA's office improperly released, and Defendant improperly obtained, the expunged records such that the records should not be used at any point during this case. She offers no argument as to why she waited nearly nine months after release of the expunged records to move to prohibit inquiry into and use of those records.

Also fatal to Plaintiff's argument is that she applies the wrong standard. Under Federal Rule of Civil Procedure 6(b)(1)(A), if a party moves to extend a deadline before it has expired, the movant need only make a showing of good cause. In contrast, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time: (B) on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1). That is, "[i]nsofar as the Rule 26.6 deadline passes before the party files a motion

showing good cause for extension, . . . the movant must also demonstrate excusable neglect." *Escano v. RCI, LLC*, No. CV 2:22-360 DHU/GJF, 2024 WL 68530, at *2 (D.N.M. Jan. 5, 2024). "To demonstrate 'excusable neglect' in these circumstances, [the movant] must show both 'good faith' in seeking the additional time to complete its discovery and 'a reasonable basis for not complying within the specified period.'" *United States v. New Mexico State Univ.*, No. 1:16-CV-00911-JAP-LF, 2018 WL 1353014, at *2 (D.N.M. Mar. 15, 2018) (quoting *Estate of Anderson v. Denny's Inc.*, 291 F.R.D. 622, 631 (D.N.M. 2013)). Plaintiff fails to make any argument regarding excusable neglect.

     Because Plaintiff fails to show good cause or excusable neglect for her untimely filing, the Court denies the motion for protective order. The Court, however, limits this Order to inquiry and use of the expunged records during discovery. Should Plaintiff wish to exclude such information from trial, she is welcome to make such a request to be decided by the presiding judge, Chief Judge Johnson. Additionally, under the terms of the Protective Order agreed to by the parties and entered in this case, Plaintiff is welcome to mark as confidential information that she believes falls under that order. Doc. 81 (defining confidential information as "[i]nformation containing or disclosing non-public trade secrets or non-public confidential proprietary business or personal information, the disclosure of which likely would be harmful to the Producing Party or to the person or entity about which the information relates"). That is, although the Court declines to enter a protective order prohibiting inquiry into and use during discovery of the expunged records, Plaintiff is free to designate information obtained and discussed during

discovery as confidential under the terms of the existing Protective Order (Doc. 81),[2] and free to challenge the admissibility of such information.

Lastly, because the Court denies Plaintiff's motion, it likewise denies her request for attorney's fees and costs associated with the motion. The Court also denies Defendant's request for fees, finding an award of expenses to be unjust given that the Court limits its Order to only discovery matters. *See* Fed. R. Civ. P. 26(c)(3), 37(a)(5)(B).

2. **Motions to Seal**

Across two motions to seal, Plaintiff seeks to seal all briefing related to the motion for protective order due to references in the briefing to the expunged proceedings.[3] Docs. 63, 68. When analyzing a motion to seal, a court begins with a "strong presumption in favor of public access." *U.S. v. Bacon*, 950 F.3d 1286, 1293 (10th Cir. 2020). The party seeking to seal "bears the burden of showing some significant interest that outweighs the presumption." *U.S. v. Pickard*, 733 F.3d 1297, 1302 (10th Cir. 2013) (citation omitted). That party "must articulate a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process." *JetAway Aviation, LLC v. Bd. of Cnty. Com'rs of Cnty. of Montrose*, 754 F.3d 824, 826 (10th Cir. 2014). Courts have discretion in this matter, *Nixon v. Warner Comms., Inc.*, 435 U.S. 589, 599 (1978), and the court's decision is "necessarily fact-bound," to be made "in light of the relevant facts and circumstances of the particular case." *U.S.*

---

[2] Likewise, nothing in this Order prohibits Defendant from challenging a confidential designation, according to the terms of the Protective Order. Doc. 81 ¶¶ 10-11.

[3] That is, she filed the motion for protective order (Doc. 64) and the reply (Doc. 69) under seal and she moves to keep them under seal. Defendant filed its response to the motion for protective order (Doc. 65) not under seal and Plaintiff moves to seal it. Lastly, although Defendant did not file its response under seal, it filed an exhibit (the BERNCO DA-000001-000161 records) under seal (Doc. 66) and Plaintiff moves to keep that exhibit under seal.

*v. Hickey*, 767 F.2d 705, 708 (10th Cir. 1985). "Therefore, the district court, in exercising its discretion to seal or unseal judicial records, must weigh the interests of the public, which are presumptively paramount, against those advanced by the parties." *Bacon*, 950 F.3d at 1293 (cleaned up).

The information Plaintiff seeks to seal falls into two categories: the briefing, which discusses her now-expunged criminal case (Docs. 64, 65, 69) and exhibits Defendant attached to its response which include the actual expunged records (Docs. 65-1, 65-7, 66). The Court begins by examining whether the briefing should be sealed. Plaintiff argues that, given "[t]he inherent nature of an expungement law in trumping the public's entitlement to open government records," all briefing should be sealed "due to the filings' references to expunged proceedings and documents." Doc. 68 at 2, 1.

The Court disagrees that mere references to the existence of the expunged criminal case should be sealed from public view. Although Plaintiff shows some interest in keeping references to her criminal case sealed now that the case has been expunged, on balance she has not shown a significant interest that outweighs the interest of the public given that this issue is central to her case (i.e., Defendant argues, in part, that it terminated for her failure to report a felony while Plaintiff argues that explanation is pretextual). *See, e.g.*, *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1242 (10th Cir. 2012) ("Where documents are used to determine litigants' substantive legal rights, a strong presumption of access attaches." (cleaned up)). Indeed, Plaintiff herself mentions the criminal case in her complaint and in multiple other public filings. Doc. 1 ¶ 17(c) (original complaint); Doc. 33 ¶ 17(c) (amended complaint); Doc. 21 at 2 (the parties' Joint Status Report, discussing the criminal case in the "stipulations"); Doc. 41-1 at 4-6 (Plaintiff's motion to compel, providing information on the criminal case); Doc. 61 (clerk's minutes from non-sealed

hearing during which the parties discussed the criminal case). In general, courts have declined to seal, or have unsealed, records when the information is already publicly accessible. *See, e.g., Doe v. Taos Mun. Sch.*, No. 20-CV-1041, 2023 WL 7299675, at *4 (D.N.M. Nov. 1, 2023); *U.S. v. Robertson*, No. 17-CR-02949, 2021 WL 1799408, at *5 (D.N.M. May 5, 2021); *In re EpiPen (Epinephrine Injection USP) Mktg., Sales Pracs. & Antitrust Litig.*, Case No. 17-md-2785, 2021 WL 2585065, at *1 n.3 (D. Kan. June 23, 2021).

On the other hand, given that the actual records have been expunged, and thus are not available for public access, the Court finds that Plaintiff's interest in sealing the records themselves outweighs the public interest. Accordingly, the Court grants in part and denies in part Plaintiff's motions to seal. The briefs (Docs. 64, 65, and 69) shall be unsealed while exhibits attaching the expunged records (Docs. 65-1, 65-7, 66) shall be sealed.

## CONCLUSION

For these reasons, the Court DENIES Plaintiff's Motion for a Protective Order (Doc. 64). The Court also GRANTS IN PART AND DENIES IN PART "Plaintiff's Motion to File a Protective Order Under Seal" (Doc. 63) and "Plaintiff's Motion to Seal Defendant's Response [Docs. 65 and 66] and Plaintiff's Reply [Doc. 69] to Plaintiff's Motion for a Protective Order" (Doc. 68). The briefs (Docs. 64, 65, and 69) shall be unsealed while exhibits attaching the expunged records (Docs. 65-1, 65-7, 66) shall be sealed.[4]

---

[4] Doc. 64 (motion for protective order and attached exhibits) and 69 (reply) are currently filed under seal and the Clerk's office shall therefore unseal them. Doc. 65 (response) is currently unsealed, which shall not change, except that the Clerk's office shall seal two exhibits, Docs. 65-1 and 65-7. Doc. 66 is currently filed under seal and shall remain so.

IT IS SO ORDERED.

_____
Steven C. Yarbrough
United States Magistrate Judge